<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>INTERNATIONAL BENEFITS GROUP, INC.,<br><br>                     Debtor.<br>JONATHAN KOHN, TRUSTEE<br><br>             Plaintiff,<br><br>v.<br><br>HAYMOUNT LIMITED PARTNERSHIP, LP, WESTMINISTER ASSOCIATES II, INC., HAYMOUNT CORPORATION, JOHN CLARK, EDWARD J. MILLER, JR., AND AMERICAN PROPERTY CONSULTANTS, LTD.,<br><br>             Defendants. | Civil Action No. 06-2363(KSH)<br><br><br><br><u>OPINION</u> |

<u>**KATHARINE S. HAYDEN U.S.D.J.**</u>

## I.      INTRODUCTION

International Benefits Group, Inc. ("IBG") filed a voluntary petition for Chapter 11

bankruptcy on July 22, 2004, which was converted to a Chapter 7 bankruptcy case on June 21,

2005.  On March 21, 2006, the plaintiff Jonathan Kohn, who was appointed the trustee in the

Chapter 7 case, filed an adversary proceeding in the bankruptcy court, asserting various state law

claims arising from an alleged breach of contract with the debtor.  Defendants Haymount Limited

Partnership, LP ("Haymount"), Westminster Associates II, Inc. ("Westminster"),  Haymount

Corporation, John Clark ("Clark"), and Edward J. Miller, Jr. ("Miller") (collectively referred to

as the "Haymount defendants") brought a motion to withdraw the reference to the bankruptcy

court so the case may be heard by this Court, which was granted on August 21, 2006.

Of the five counts in the original adversary complaint, the first two, breach of contract

and unjust enrichment, were brought against the Haymount defendants only.  The remaining

three, tortious interference, common law conspiracy, and statutory civil conspiracy, were brought

against all defendants.  On October 3, 2006, the plaintiff filed an amended adversary complaint

that added a sixth cause of action for unjust enrichment against American Property Consultants

("APC").

The Haymount defendants and APC have now brought separate motions to dismiss under

Federal Rule of Civil Procedure 12 (b)(6).  The record on these motions consists of the amended

adversary complaint and the exhibits attached thereto.

## II.        BACKGROUND

In September 2002, Haymount entered into a contract with IBG (the "IBG fee

agreement").  IBG agreed to provide "Haymount with introductions to third parties ("Lenders")

who may be willing to provide construction and/or permanent financing ("Loans") for the

Project."[1]  (Compl. ¶ 24, Ex B.)   According to the fee agreement, "[i]f Haymount utilized a Loan

from a lender introduced by IBG, Haymount will pay IBG a fee (a "Loan Fee") of $3,000,000

---

[1]The Project was Haymount's plan "to develop a residential project in and about
Fredericksburg, Virginia consisting of residential and commercial units." (Compl. ¶ 24, Ex B.)

paid at closing." (Compl. ¶ 25, Ex. B.)  The president of IBG, Joseph Domal ("Domal"), subsequently introduced a number of potential lenders to Haymount.  (Compl. ¶¶ 28-29.)

In November 2002, IBG introduced Haymount to defendant American Property Consultants.  (Compl. ¶ 30.)  IBG informed Haymount that APC "was a source of financing, but was not in the business of financing projects directly."  (Compl. ¶ 33.)  After this introduction, Stuart Lederer ("Lederer") of APC asked Domal whether his company "needed protection" under a contemplated fee agreement between APC and Haymount, and Domal declined because IBG had pre-existing fee agreement with Haymount described above.  (Compl.  ¶ 43.)

On November 8, 2002, Haymount entered into a fee agreement with APC ("APC fee agreement") that stated:  "Haymount hereby retains APC on an exclusive basis to serve as its investment advisor to assist it in obtaining sources of equity and/or debt for recapitalization, development and financing of the [Haymount project]."  (Compl.  ¶¶ 39 & 40, Ex. C.) According to the complaint, "Domal initially understood and believed that the APC Fee Agreement did not conflict with or interfere with the Fee Agreement between Haymount and IBG."  (Compl. ¶ 42.)

In late 2003, APC introduced Haymount to General Motors Acceptance Corporation ("GMAC").  (Compl. ¶ 37.)  Thereafter, IBG and Domal were "no longer invited to participate in meetings and other communications concerning the Haymount Project."  (Compl. ¶ 44.)  In September of 2003, Clark met with Domal and informed him that "the funding budget of the Haymount Project did not include a provision for IBG's fee."  (Compl. ¶ 46.)  At the meeting Clark also "conceded that IBG was owed its fee at closing and apologized to Domal for the fact that there would be insufficient funds to pay it."  (Id.)

In July 2004, Haymount closed on an agreement with GMAC to finance the Haymount project.  (Compl. ¶ 53.)  Haymount subsequently terminated the APC agreement and paid APC its fee.  (Compl ¶¶ 42, 60.)  Haymount then terminated the IBG fee agreement.  (Compl. ¶ 56.)  Nevertheless, IBG sent Haymount a list of "Introduced Persons" according to the terms of the agreement, which included APC and GMAC.  (Compl. ¶¶ 58, 59.)  Haymount never paid IBG a fee or a commission.  (Compl. ¶ 61.)  IBG filed for bankruptcy on July 22, 2004.  (Compl. ¶ 57.)

## III.    STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6) a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted.  At this stage of the litigation, the Court must accept the plaintiff's allegations as true.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  Maio v. Aetna, Inc., 221 F.3d 472, 482 (3rd Cir. 2000)

## IV.    CHOICE OF LAW

The plaintiff has asserted six state law claims and there are three states that are potentially interested these claims: New York, New Jersey and Virginia.  The law of these states differs on some of the plaintiff's claims.  For this reason, the Court must conduct a choice of law analysis for each claim.

When a federal district court is faced with a choice of law dispute it must use the choice of law rules of the forum state to determine which state's law should govern.  Klaxon v. Stentor

Electric Mfg. Co., 313 U.S. 487, 496-497 (1941).  New Jersey utilizes the "governmental-interest" standard in choice of law disputes.  Gantes v. Kason Corp., 145 N.J. 478, 484 (1996).  Under this standard a court applies the "law of the state with the greatest interest in resolving the particular issue that is raised in the underlying litigation."  Id.  The first step is to determine if an actual conflict exists.  Veazey v. Doremus, 103 N.J. 244, 247-249 (1986).  If there is no conflict between the law of New Jersey and the law of other potentially interested states then the New Jersey law will apply.  If there is a conflict then the court must determine what interest each state has in resolving the issue in dispute.  Gantes,145 N.J. at  484.  To do this the Court must "identify the governmental policies underlying the law of each state and how those policies are affected by each state's contacts to the litigation and to the parties."  Veazey, 103 N.J. at 548.  The New Jersey Supreme Court has stated, "We will usually apply a particular State's law when doing so 'will advance the policies that the law was intended to promote.'"  Pfizer Inc. v. Employers Ins. of Wausau, 154 N.J. 187, 198 (1998).

## V.    DISCUSSION

### 1.  Breach of Contract

The plaintiff's first cause of action, breach of contract, is asserted against all of the Haymount defendants except Clark and Miller, and the parties agree that New York law applies because the IBG fee agreement expressly states, "This agreement . . . shall be governed by and construed under the internal laws (as opposed to the laws of conflicts) of the State of New York." (Compl. Ex. A ¶ 7.)

The plaintiff alleges that Haymount breached the IBG fee agreement by failing to pay

IBG its fee.  The Haymount defendants deny breach on the basis that IBG failed to satisfy an express condition precedent in the agreement that "Haymount utilize a loan from a lender introduced by IBG."  (Compl. Ex. A ¶ 1.)  They claim Haymount utilized a loan introduced to them by a competing broker, APC.  But plaintiff argues that although IBG did not personally introduce Haymount to GMAC, it was through Domal's efforts that Haymount was "introduced" to GMAC; further, he argues that there is an ambiguity in the fee agreement which precludes dismissal at this stage.

Under New York law a contract must be interpreted to give effect to the intentions of the parties as expressed in the language they have employed.  Terwilliger v. Terwilliger, 206 F.3d 240, 245 (2d Cir. 2000).  The IBG fee agreement states:  "If Haymount utilizes a Loan from a Lender introduced by IBG, Haymount will pay IBG a fee (a "Loan Fee") of $3,000,000 paid at closing."  (Compl.  ¶ 25, Ex. B.)  According to the complaint Haymount utilized a loan from a lender  (Compl. ¶ 60), raising the question whether that lender was introduced to Haymount by IBG.

The IBG fee agreement defines the term "Introduced Persons" thus:  "'Introduced Persons' shall mean individuals and entities they represent who are actually introduced to Haymount through the introduction to John Clark in the context of potentially making Loans to Haymount."  (Compl.  ¶ 25, Ex. B.)  The Haymount defendants argue that this language required IBG to personally introduce the lender to Haymount to earn its fee.  IBG counters that the language does not clearly indicate that a direct introduction is required.  IBG points to court decisions that have held in similar circumstances that indirect introductions are sufficient in the absence of unequivocal language requiring a direct introduction.

-6-

In Komatsu Investments, Ltd. v. Greater China Corp.,1998 WL 430555 *1 (S.D.N.Y. 1998), the parties entered into an agreement that obligated the defendant to pay the plaintiff a fee if investments were made by investors whom the plaintiff introduced to the defendant.  The plaintiff contacted an investment broker, who in turn contacted another group, which in turn introduced the defendant to two companies that made investments.  The defendant argued that the agreement required the plaintiff to introduce potential investors directly.  The court determined that "the law of New York, which here governs, does not require such direct contact as a condition for earning a finder's fee absent an express and unequivocal indication that such direct contact is required."  Id.  The court went on to find that the agreement did "not unambiguously indicate that [the plaintiff] must itself directly contact the investors and personally introduce them" to the defendants.  Id.

The IBG fee agreement is similar.  Both agreements require one party to introduce the other party to an intended target and neither expressly states that a direct introduction is required. This Court agrees with the analysis in Komatsu, and concludes that in the absence of unequivocal language, there is no basis to hold as a matter of law that a direct introduction was required. Komatsu,1998 WL 430555 at *1; see also Train v. Ardshiel Associates, Inc., 635 F.Supp. 274, 279 (S.D.N.Y.,1986).  The Court finds that the plaintiff is entitled to prove his claim that the Haymount defendants breached the IBG fee agreement.  Haymount's motion to dismiss this claim is denied.

## 2. Unjust Enrichment

The cause of action for unjust enrichment is brought against all of the Haymount defendants, who are seeking dismissal because "the existence of an express contract covering the

same subject matter as plaintiff's allegations precludes the assertion of a claim for unjust enrichment." (Haymount Defendants' Reply Brief in Support of Motion to Dismiss 8.) They also claim that a choice of law decision is not necessary because the law of all three potentially interested states is the same on this issue.

The Court agrees that under the law of any of the three potentially interested states the same rule applies: the existence of a valid express contract concerning the same subject matter as the plaintiff's claim precludes the assertion of a claim under a quasi-contract theory of liability. See, e.g., Suburban Transfer Service, Inc. v. Beech Holdings, Inc., 716 F.2d 220, 227 (3d Cir. 1983)(New Jersey law); New Paradigm Software Corp. v New Era of Networks, Inc., 107 F.Supp 2d. 325, 329 (S.D.N.Y. 2000)(New York law); Acorn Structures, Inc. v. Swantz, 846 F.2d 923. 926 (4th Cir. 1988)(Virginia law). Since there is no conflict between New Jersey law and the law of the other potentially interested states, New Jersey law will apply, and its application requires that this claim be dismissed because both sides agree that the IBG fee agreement is a valid express contract providing for payment of the *same* services the unjust enrichment claim seeks payment for. (Compl. ¶ 72.) The Haymount defendants' motion to dismiss is granted as to the plaintiff's second cause of action. Suburban Transfer Service, 716 F.2d at 227.

3. **Tortious Interference With The Fee Agreement**

The third cause of action, tortious interference with the fee agreement, is brought against all of the defendants. On the basis that an entity cannot interfere with its own contract, plaintiff has consented to the dismissal of the tortious interference claim against Haymount. See e.g., Koret, Inc. v. Christian Dior S.A., 161 A.D.2d 156, 157 (N.Y. App. Div. 1990). The Court must

perform a choice of law analysis for this claim as it applies to the remaining defendants.

Applying the governmental interest standard, it appears that New York law should apply. The contract that was allegedly interfered with, the IBG fee agreement, is governed by New York law, and APC's actions which, form the basis of the tortious interference claim, are connected to New York:  APC is a New York corporation, the APC fee agreement is governed by New York law, and APC's duties under that agreement were supposed to be performed in New York. (Compl. ¶ 17, Ex. C.)

Addressing this claim against Haymount Corporation and Westminster, which are the general partners of Haymount LP, the Court notes that Clark, the Vice President of Westminister, and Miller, the President of the Haymount Corporation, signed the IBG fee agreement for Haymount on behalf of their respective companies.  The Haymount defendants argue that under the intracorporate immunity doctrine, "agents of a corporation cannot interfere with a contract to which the corporation is a party."  (Haymount Defendants' Brief in Support of Motion to Dismiss 16.)  They claim that because these defendants are agents of Haymount they cannot be held liable for tortious inference.  The plaintiff counters that the doctrine of intracorporate immunity "doesn't apply when the agents are acting for 'personal purpose or gain.'"  (Plaintiff's Brief in Opposition to the Haymount Defendants' Motion to Dismiss 20.)  The plaintiff also argues that the intracorporate immunity doctrine only applies when the agents are acting in good faith.  (Id. at 21.)

But a review of the complaint establishes that there does not appear to be any basis for tortious interference as against Clark and Miller.  The complaint does not allege that they were acting in bad faith or for personal purpose or for gain, and as such New York law shields them

under the doctrine of intracorporate immunity.  <u>Petkanas v. Kooyman</u>, 303 A.D.2d 303, 305

(N.Y. App. Div. 2003).

The plaintiff has also brought a tortious interference claim against APC.  Under New

York law there are five elements to an action for tortious interference with a contract:  "the

existence of a valid contract between the plaintiff and a third party, defendant's knowledge of that

contract, defendant's intentional procurement of the third-party's breach of the contract without

justification, actual breach of the contract, and damages resulting therefrom."  <u>Lama Holding Co.

v. Smith Barney Inc.</u>, 88 N.Y.2d 413, 424 (1996).

APC argues that the IBG fee agreement was never actually breached and that it did not try

to procure its breach.  To the contrary, APC contends that it actually tried to protect IBG's

interests, and that plaintiff admits this in paragraph 43 of the amended complaint:

> Before entering the agreement with Haymount, APC by Stuart Lederer asked Domal if:
> IBG needed "protection" under the contemplated APC Fee Agreement.  Domal did not
> believe that IBG needed protection under the APC fee agreement because of the existence of
> its own fee agreement with Haymount.  Domal so informed APC.

(Compl. ¶ 43.)

APC argues that "Lederer's inquiry and Domal's response belie any allegation by plaintiff that

APC intended to interfere with the fee agreement between Haymount and IBG."  (APC's Brief in

Support of Motion to Dismiss 5.)  The plaintiff argues that notwithstanding this conversation,

the complaint still makes out a claim against APC for tortious interference.

According to the complaint, "APC was on notice that, when and if an APC client loaned

money to Haymount for the Haymount Project, a fee would be payable to IBG pursuant to the fee

agreement."  (Compl. ¶ 35.)  After IBG introduced APC to Haymount, APC formed a separate

fee agreement with Haymount which purported to retain APC on an exclusive basis.  (Compl. ¶

-10-

40.)   The complaint alleges that Domal and IBG were excluded from discussions concerning the

Haymount project after APC signed an agreement with Haymount.  (Compl. ¶¶ 38, 44, 45.)

Accepting these allegations, as the motion to dismiss analysis requires, that Court determines that

IBG has  alleged that APC intentionally procured Haymount's breach of the IBG fee agreement.

The conversation between Lederer and Domal about the APC fee agreement is relevant to the

plaintiff's tortious interference claim but it is not dispositive on the issue of the claim's survival.

APC's motion to dismiss the plaintiff's third cause of action is denied.

**4.  Common Law Conspiracy Claim**

The fourth cause of action for common law conspiracy was brought against all of the

defendants.  A choice of law analysis is required and the Court finds that on the facts alleged, the

Commonwealth of Virginia has the greatest interest in resolving this dispute.  All of the

defendants except APC reside or do business in Virginia, the Haymount property is located in

Virginia, and the complaint alleges that the actions taken in furtherance of the conspiracy

occurred in Virginia.  (Compl. ¶¶ 11-17, 19, 36, 38.)

Under Virginia law, "civil conspiracy is a combination of two or more persons, by some

concerted action, to accomplish some criminal or unlawful purpose, or to accomplish some

purpose, not in itself criminal or unlawful, by criminal or unlawful means."  Hechler Chevrolet,

Inc. v. General Motors Corp., 230 Va. 396, 402 (1985).  Conspiring with another to induce the

breach of a contract is recognized under Virginia law as a form of civil conspiracy.  Bowman v.

State Bank of Keysville, 229 Va. 534, 540-541 (1985).  To prove this claim the plaintiff must

show that the contract was breached and that there was a conspiracy to procure that breach.  Id.

The plaintiff has brought common law civil conspiracy claims against Clark and Miller.

-11-

The Court agrees with the defendants that Clark and Miller were legally incapable of conspiring with their corporations because the complaint does not allege that they were acting outside the scope of their employment.  Selman v. American Sports Underwriters, Inc. 697 F.Supp. 225, 238 (W.D.Va.,1988)(stating "a conspiracy between a corporation and the agents of that corporation who are acting in the scope of their employment is a legal impossibility.")  The Court also agrees that Clark and Miller could not have personally conspired with APC if they were acting in the scope of their employment.  See Stafford Urgent Care, Inc. v. Garrisonville Urgent Care, P.C., 224 F.Supp.2d 1062, 1065 (E.D.Va.,2002)(stating "an individual corporate officer or director is not subject to personal liability simply by virtue of his office.")  As such, the civil conspiracy claims against Clark and Miller are dismissed.

As to the civil conspiracy claims brought against Haymount and APC, the plaintiff has properly alleged that the contract was breached (see supra Section V Part 1), and the complaint alleges that these defendants acted in concert to exclude IBG from meetings concerning the Haymount project and thereby deprive IBG of its fee.  (Compl. ¶¶ 44-45.)  Accordingly, the plaintiff has alleged that these defendants acted together to breach the IBG fee agreement, and the civil conspiracy claims will survive against them.

**5. Statutory Civil Conspiracy**

The Court will apply Virginia law to this cause of action for the same reasons it applied Virginia law to the common law conspiracy claim.  The elements of statutory civil conspiracy under Va. Stat Ann. §§ 18-2.499 and 18-2.500 are: "(1) two or more persons combined associated agreed, or mutually undertook together to (2) willfully and maliciously injure another in his reputation, trade, business or profession."  T.G. Slater & Son, Inc. v. The Donald P. and

Patricia Brennan LLC, 385 F.3d 836, 845 (4th Cir. 2004)(applying Virginia law).  As stated above, agents of a corporation who are acting within the scope of their employment cannot legally conspire with the corporation they serve.  Selman, 697 F.Supp. at 238.  Moreover, if Clark and Miller were acting within the scope of their employment they cannot be held liable for individually conspiring with APC.  Stafford Urgent Care, 224 F.Supp.2d at 1065.  As a consequence, the statutory conspiracy claims against Clark and Miller are dismissed.

As for the rest of the defendants, the plaintiff has alleged that Haymount and APC conspired to willfully deprive IBG of its fee.  (Compl. ¶ 44, 45.)  The plaintiff has also alleged that their action led to an injury in IBG's business.  (Compl. ¶¶ 63, 64.)  The plaintiff has pleaded sufficient facts to state a claim for statutory civil conspiracy against Haymount and APC.

**6.  Unjust Enrichment**

The parties agree that New York law should apply to the unjust enrichment claim, which requires that the claimant establish "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution."  Beth Israel Medical Center v. Horizon Blue Cross and Blue Shield of New Jersey, Inc., 448 F.3d 573, 586 (2d Cir. 2006) (applying New York law).  According to the complaint, APC benefitted when IBG introduced it to Haymount (Compl. ¶¶ 30, 60) and APC received a benefit at IBG's expense (Compl. ¶ 50, 61).  Accepting these allegations as true, the Court finds that the plaintiff has properly alleged a claim for unjust enrichment against APC.

**VI.    CONCLUSION**

For the foregoing reasons, the Haymount defendants' motion to dismiss is granted as to

-13-

the second and third causes of action.  The Haymount defendants' motion to dismiss the first, fourth, and fifth causes of action is granted as to Clark and Miller and denied as to the remainder of the Haymount defendants.  APC's motion to dismiss the third, fourth, fifth, and sixth causes of action is denied.  An appropriate order will be entered.


Dated: June 27, 2007                                                    /s/ Katharine S. Hayden
                                                                                        KATHARINE S. HAYDEN
                                                                                        United States District Judge